**AIKEN LOAN CO. v MUSTAINE et**

Ohio Appeals, 3rd Dist, Logan Co.

No. 852. Decided Aug. 10, 1939

George S. Middleton, Bellefontaine, for plaintiff.

Roy Warren Roof, Kenton, for defendants.

## OPINION

By GUERNSEY, J.

This is an appeal on questions of law from a judgment of the Court of Common Pleas of Logan county, in an action pending therein wherein The Aiken Loan Company, a corporation, is plaintiff and Mary Mustaine, E. W. Mustaine and The Savings Building & Loan Company are defendants. The action is brought by The Aiken Loan Company, a corporation, as a judgment creditor of the defendants Mary Mustaine and E. W. Mustaine to have a certain parcel of real estate owned by the judgment debtors and on which plaintiff's judgment is a lien, sold and the proceeds applied to the payment of plaintiff's judgment.

In its petition the plaintiff prays that that the defendant, The Savings Building & Loan Company, claims to have some lien or right to said premises by reason of which claim plaintiff is un-able to execute the sale of said premises under said execution.

In its petition the plaintiff prays that said claimant be compelled to set up its claim, if any it may have in said premises, or be forever barred, and that the court will adjust the priorities thereof and of plaintiff's said lien, and that said real estate may be ordered sold and the proceeds thereof distributed among the claimants according to their respective priorities, as the same may be determined by the court.

To the petition of the plaintiff, Security Federal Savings & Loan Association of Bellefontaine filed its answer in the words and figures following, to-wit:

"Now comes the defendant, the Security Federal Savings and Loan Association of Bellefontaine, described in the petition as The Savings Building & Loan Company, and for answer to the plaintiff's petition says that on October 13, 1926, the defendants, Elmer W. Mustaine and Mary Mustaine, executed and delivered to this answering defendant their certain promissory note calling for $500.00, and on the same date in order to secure the payment of said note executed and delivered to this answering defendant their certain mortgage deed conveying the premises described in the petition. That said mortgage deed was filed for record on October 15, 1926, at 3:30 P. M. o'clock and recorded on October 16, 1926, in Volume 63, page 311, of the mortgage records of Logan County, Ohio.

"This answering defendant further says that there is now due, owing and unpaid on said note the sum of $433.19 together with interest thereon at 6%, from the 31st day of January, 1938.

"This answering defendant further says that said mortgage is the first and best lien against said premises.

"Wherefore, this answering defendant prays that its mortgage be found by the court to be the first and best lien against said premises described in the petition and that upon the sale of the same said note and mortgage be ordered first paid out of the proceeds of the sale."

Under date of January 29, 1938, the following judgment was entered in said cause:

"This 29th day of January, 1938, this cause came on to be heard upon the petition of the plaintiff, the separate answers of Elmer W. Mustaine and Mary Mustaine and the reply of the plaintiff to said answers and the answer of the Security Federal Savings & Loan Association of Bellefontaine. And it further appearing to the court that the defendants, Elmer W. Mustaine and Mary Mustaine failed to introduce any evidence upon the allegations contained in their answer and failed to appear either in person or by counsel. And the court further finds that the plaintiff recovered a judgment against the defendants, Elmer W. Mustaine and Mary Mustaine, in the Court of Common Pleas of Union County, Ohio, in the sum of $448.47, with interest from the 18th day of December, 1934, at 8%, and also $9.25 costs, which judgment is wholly unpaid and unsatisfied.

"Court coming further to consider the evidence finds that the defendants, Elmer W. Mustaine and Mary Mustaine, did not have on file in the Common Pleas Court of Union County, Ohio any petition or petitions to open up the judgment obtained against them in said court by the plaintiff herein.

"Court coming now to consider the answer of the Security Federal Savings and Loan Association of Bellefontaine finds that since the beginning of this action The Savings Building and Loan Company has been succeeded in interest herein by the Security Federal Savings & Loan Association of Bellefontaine. The court further finds the Security Federal Savings and Loan Association of Bellefontaine has a first mortgage lien upon the premises described in the petition and that there is due thereon the sum of $433.19.

"It is therefore considered by the court that unless within three days from the entry of this decree, that the defendants Elmer W. Mustaine and Mary Mustaine, pay or cause to be paid to the clerk of this court, the judgment of the plaintiff and the costs herein, that the sheriff of Logan County, Ohio shall proceed to advertise and sell said premises as upon execution and report his proceedings to this court for further orders."

Under date of May 17, 1938, the defendants Mary Mustaine and E. W. Mustaine filed their motion in said cause, in the words and figures following, to-wit:

"Now come the defendants, E. W. Mustaine and Mary Mustaine and represent to the court, that prior to the sale of the real estate herein, by the sheriff of this county, they caused to be filed with said sheriff, their application for a demand for a homestead exemption in said real estate. That said sheriff caused said real estate to be appraised for said homestead exemption but refused to set off to them, a homestead in said real estate in accordance ᵂith §§11730 to 11734, GC, inclusive.

"Now, therefor, these defendants move the court for an order, requiring the sheriff of this county, of Logan, to set off to them, a homestead exemption in the real estate herein, according to §§11730 to 11734, GC, inclusive."

On the same date, the said defendants Mary Mustaine and E. W. Mustaine filed their objections to the confirmation of sale, which objections are in the words and figures following, to-wit:

"Now come the defendants, E. W. Mustaine and Mary Mustaine and object to the confirming of the sale herein for the following reasons, to-wit:

1. Because the sale of said real estate was irregular and contrary to law, in this, to-wit: that the Federal Savings Building & Loan Company of Bellefontaine, had the first and best mortgage lien on said real estate, and said mortgage had not been foreclosed and neither, had there been any judgment taken by said defendants, against the defendants, Mary Mustaine and E. W. Mustaine and said real estate should

have been sold by the sheriff subject to the mortgage lien of the defendant, The Federal Savings Building & Loan Company.

2. That prior to the sale of said real estate, by the sheriff, the defendants, E. W. Mustaine and Mary Mustaine, filed their demand for a homestead exemption in said real estate and although, said sheriff caused said real estate to be appraised for said homestead exemption, he, nevertheless, failed, neglected and refused to set off to said defendant, their claim for a homestead exemption, in accordance with §§11730 to 11734, GC, inclusive."

Under date of July 11, 1938, a judgment was entered in said cause as follows:

"This day this cause came on to be heard upon the return of the sheriff of the order of sale heretofore issued herein and also upon the motions of Mary Mustaine and Elmer W. Mustaine. And the court upon consideration thereof sustains the motion for allowance of $500.00 in lieu of homestead and overrules the motion to set aside the sale and to set off the property as a homestead.

"The court coming on further to consider the return of the sale of the sheriff herein finds that said sale was conducted in all respects in conformity to law and the orders of the court and said sale is hereby approved and confirmed and the sheriff is ordered to deliver to the purchaser, Alice Reames, a deed for said premises upon the payment of the purchase price of $1175.00, and a writ of possession is issued to place said purchaser in possession of said property.

"The court coming now to distribute the proceeds of said sale amounting to $1175.00, orders that there be first paid therefrom the costs in the sum of $73.27; Second, the taxes in the sum of $6.38; Third, to the Security Federal Savings & Loan Association of Bellefontaine, the amount of its mortgage in the sum of $424.18; Fourth, to Elmer W. Mustaine and Mary Mustaine, the sum of $500.00, as allowance in lieu of

homestead; and Fifth, that the balance, the sum of $171.17, be paid to the plaintiff, The Aiken Loan Company as a credit upon its judgment. Exceptions saved for deft.

"And this cause is continued.

"Bond fixed at $200.00."

This is the judgment from which this appeal is taken.

It is stipulated by the parties, in a statement filed in lieu of a bill of exceptions, that Mary Mustaine and Elmer W. Mustaine are husband and wife; and that at the time of the commencement of this action, at the time of the sale of the premises involved in this action and at the present time, said Mary Mustaine and Elmer W. Mustaine have been and are occupying said premises as their home.

It is contended by the appellants that because the Security Federal Savings & Loan Association of Bellefontaine did not in said action seek foreclosure of its mortgage and said mortgage was not ordered foreclosed, and the order "that the sheriff of Logan County, Ohio, shall proceed to advertise and sell said premises as upon execution and report his proceedings to this court for further orders", is by its terms effective only in the event that the defendants Elmer W. Mustaine and Mary Mustaine do not within three days from the entry of the decree pay or cause to be paid to the clerk of the court the judgment of the plaintiff and the costs, the defendants appellants are entitled in said action to have a homestead of the value of one thousand dollars set off to them in kind as against the judgment debt of the plaintiff and are not limited to an allowance of five hundred dollars out of the proceeds of the real estate in lieu of a homestead, as ordered by the court in its entry of confirmation. The contention of the appellants involves a consideration of the provisions of §11729 et seq. GC, and particularly §§11729 and 11737.

The contention of the appellants with reference to the construction to be placed on said sections is supported by the decision and reasoning in the opin-

ion in the case of **Wm. Bernsee v C. B. & W. H. Hamilton, 6 O C C at p. 487,** the syllabus of which is quoted with apparent approval in the case of **Kilgore v Miller et, 19 O C C, p. 93.**

Sec. 11729, GC, above mentioned immediately precedes the sections of the code relating to homestead exemptions. The pertinent part of this section reads as follows:

"The following sections of this subdivision of this chapter shall not extend to a judgment rendered on a mortgage executed by a debtor and his wife. * * *"

Sec. 11737, GC, is as follows: .

"When a homestead is charged with liens, some of which, as against the head of a family or the wife, preclude the allowance of a homestead to either of them, but others of such liens do not, and a sale of such homestead is had, then, after the payment, out of the proceeds of sale, of the liens so precluding such allowance, the balance not exceeding five hundred dollars, shall be awarded to the head of the family or to the wife, as the case may be, in lieu of such homestead, upon his or her application, in person, by agent, or attorney."

In the opinion in the Burnsee case, **supra,** it was stated that the object of this §11729, GC, which was formerly known as §5434, Revised Statutes, is to provide that where a mortgage has been given and executed by a husband and wife, that, shall take away the right as far as that mortgage is concerned, to the homestead. And with reference to the provisions of §11737, GC, then §5440, Revised Statutes, it is stated: "It is provided in §5440, that when a homestead is charged with liens, some of which, as against the head of the family, or the wife, preclude the allowance of a homestead to either of them, and others of such liens do not preclude such allowance, and a sale of

such homestead is had, then, after the payment, out of the proceeds of such sale, of the liens so precluding such allowance, the balance, not exceeding $500, shall be awarded to the head of the family, or the wife as the case may be, in lieu of such homestead, upon his or her application in person, or by agent or attorney. Our construction of that is, that such sale must be a sale made upon a mortgage which precludes the allowance of a homestead, and not simply a sale upon a judgment at the instance of the judgment creditor as against whom a homestead may be allowed."

It will be noted that the whole decision is based upon the court writing into the statute a provision "that such sale must be a sale made upon a mortgage which precludes the allowance of a homestead."

It will be noted upon an inspection of the provisions of §11737, GC, that it expressly prescribes a state of facts similar to the facts in the case at bar "when a homestead is charged with liens, some of which as against the head of the family or the wife, preclude the allowance of a homestead to either of them, but others of such liens do not and a sale of such homestead is had", under which the provisions of said section as to an allowance in lieu of a homestead becomes applicable. The chapter in which said Section appears relates to sales on execution or order of court and the word "sale" as used in this Section comprehends any judicial sale subject to the usual incidents thereof, the meaning not being restricted by the terms of this Section or any other Section relating to the subject matter. The provisions of the Section are clear and unambiguous as to when its provisions become applicable and being clear and unambiguous are not subject to construction, and the court in the Burnsee case, **supra,** was wholly unwarranted in writing into the provisions of the section the additional provision "that such sale must be a sale upon a mortgage which precludes the allowance of a homestead." The construction placed on this section be-

ing unwarranted, we do not feel constrained to follow it.

In the opinion in the case of **John J. Nixon v David W. Vandyke, 2 O C C, 63,** the following statement as to the proper procedure and practice under the provisions of this section is made in the opinion, to-wit: "As to the proper practice in a case of this kind where one of the liens precludes the allowance of a homestead and the other does not, in the matter of rendering a judgment, we will speak briefly, though the action of the court is not questioned by the petition in error. But it seems clear to us, that the object of the petition being to marshal the liens upon the property and sell the property free from the claims of all the parties to the suit against it, that the decree should settle such rights. And as in this case, as against the mortgage of Benedict, a homestead lien could not be asserted, we think his claim should have been adjudicated and an order taken for the sale of the property to pay any amount due thereon. It is objected that the court cannot compel a person to present his lien, or having it presented to take a judgment upon it. But if he does not choose to set up his claim, the court can bar him of his right, or if he does, can compel him to proceed to judgment, and in a case like this, could decree the amount due to each, and order that unless paid within a given time, the property be sold on the application of any of the lien-holders interested therein and free of the homestead right of the judgment debtor. In such case the rights of such judgment debtor, as to the allowance of a homestead right, would stand on a different footing. It would then be governed by the provisions of §5440, which in such cases gives to the judgment debtor, if he is the head of a family as against the liens which do not preclude such allowance, the sum of $500 from the proceeds of sale, in lieu of the homestead itself."

This, we think, is a correct statement of the law and procedure applicable to cases of this character. The judgment debtor, by creating a lien on premises occupied by him as a homestead, which precludes him from claiming a homestead as against a judgment that may be rendered on said lien, thereby brings himself and such homestead clearly within the provisions of §11737, GC, and is thereby limited in case of an action brought by a judgment lienor during the existence of such lien to enforce its judgment lien to the allowance therein provided in lieu of a homestead.

In the case at bar there was a finding by the court that the mortgagee Federal Security Savings & Loan Association had a first mortgage lien upon the premises described in the petition and that there is due thereon the sum of $433.19. This finding was sufficient to authorize the issuance of execution for the amount mentioned.

While the order to the sheriff to proceed to advertise and sell said premises as upon execution and report his proceedings to the court for further orders was not conditioned upon the failure of the defendants Elmer W. Mustaine and Mary Mustaine to pay or cause to be paid to the clerk of the court the amount so found due the mortgagee, such fact is not material as such order by its terms became effective upon the failure of said defendants, within the time limited thereby, to pay or cause to be paid to the clerk the judgment of the plaintiff and the costs, which failure occurred.

No appeal was taken from such finding and order, and the sale pursuant thereto was properly made and confirmed, and the allowance in lieu of a homestead was for the reasons hereinbefore mentioned also properly made and adjudged.

For the reasons mentioned the judgment of the common pleas court will be affirmed at the costs of the appellant.

KLINGER, J., concurs.

CROW, PJ., dissenting:
Sec. 11730, GC, reads as follows:

"Who entitled to exemption. Husband and wife living together, a widow

or a widower living with an unmarried daughter or unmarried minor son, may hold exempt from sale on judgment or order, a family homestead not exceeding one thousand dollars in value. The husband, or in case of his falure or refusal, the wife may make the demand therefor; but neither can be allowed such demand, if the other has a homestead. In case of assignment, for the benefit of creditors, upon filing the written consent of husband and wife to the sale of a homestead property exempt by law, such homestead may be sold subject to the dower and homestead right herein provided."

In its relation to the instant case, the section contains neither exception, limitation nor qualification and hence the homestead right is clearly absolute otherwise than in respect of the mortgage indebtedness as mentioned in §11729, GC, which is partially quoted in the majority opinion.

The right to the homestead exemption existing in the case at bar is to be effectuated in the manner prescribed by §11734, GC, which we here set forth:

"How homestead set off. On application of the debtor, his wife, agent, or attorney, before sale, if such debtor has a family, and if the lands or tenements about to be levied upon, or any part or parcel thereof, constitute their homestead, the officer executing a writ of execution founded on a judgment or order, shall cause the inquest of appraisers, upon their oaths, to set off to such debtor, by metes and bounds, a homestead not exceeding one thousand dollars in value. Such assignment of homestead shall be returned by the officer with the writ, and be copied by the clerk in the execution docket. If no complaint be made by either party, further proceedings shall not be had against the homestead. Upon complaint of either party, and good cause shown, the court out of which the writ issued may order a re-appraisement and re-assignment of the homstead, but the remainder of the debtor's lands and tenements, if any there be, shall be liable to sale on execution. If no application is made during the life of the debtor it may be made by his widow at any time before a sale."

In this section there is neither exception, limitation nor qualification relative to the kind of a homestead excepting that it shall not exceed one thousand dollars in value. Therefore the homestead need not be free from mortgage or other lien precluding the homestead allowance.

It is common knowledge that the construction of a very large proportion of family homes is and has always been financed by mortgages, and that very many family homes carry mortgages for other purposes than their construction, and also that they are subject to the other liens mentioned in §11729, GC.

Secs. 11729, 11730, 11734 and 11737, GC, are in pari materia, indeed they were originally enacted together; and hence they must be so construed as to accomplish their basic purpose, namely assure to those entitled, occupancy of the family homestead.

The rules for interpretation of statutes such as these are found in 37 O. Jur. 594, et seq., and particularly pages 620, 622, 623, 672, 673, 674.

The case in 6 C. C. 487 being in full harmony with those rules is correct and should be followed.

The assertion in the majority opinion that the decision in that case, is a writing by the court which rendered it, into §11733, GC, the words "that such sale must be a sale made upon a mortgage which precludes the allowance of a homestead", is well answered with the statement that the effect of the decision of the majority in the instant case is to write into §§11730 and 11734, GC, the words "provided such homestead be not subject to a mortgage."

The only issue in the case at bar is one of extreme simplicity, namely shall the homestead right so clearly and unqualifiedly conferred by §11730, GC, be taken away because of collision with words in §11737, GC, providing a remedy (the sale and distribution of proceeds)

available to one having a claim precluding allowance of the homestead exemption?

The rules hereinabove referred to imperatively require that conflicting provisions be so reconciled if at all possible, that each may stand for its intended purpose, and do not justify the extinction of a clear and unquestionable right by provision of a remedial right of intentional restricted application though it be in general terms, "For the letter killeth, but the spirit giveth light."